1

2

3

4

5

6

7

8                                 UNITED STATES DISTRICT COURT

9                           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ADRIENNE BRIDGES,                              No.  2:20-cv-02207-DAD-JDP

12                   Plaintiff,

13         v.                                       ORDER GRANTING IN PART AND
                                                    DENYING IN PART DEFENDANT'S
14   CALIFORNIA DEPARTMENT OF                       MOTION TO DISMISS CERTAIN CLAIMS
     CORRECTIONS AND
15   REHABILITATION,                                (Doc. No. 36)

16                   Defendant.

17

18         This matter is before the court on the motion to dismiss certain claims filed by defendant

19   on September 26, 2022.  (Doc. No. 36.)  On October 10, 2022, the pending motion was taken

20   under submission on the papers.  (Doc. No. 38.)  For the reasons explained below, defendant's

21   motion to dismiss will be granted in part and denied in part.

22                                          **BACKGROUND**

23         On July 14, 2022, plaintiff Adrienne Bridges filed the operative first amended complaint

24   ("FAC") alleging that defendant California Department of Corrections and Rehabilitation

25   /////

26   /////

27   /////

28   /////

                                                    1

("CDCR") subjected her to discrimination and retaliation during her employment with defendant CDCR.[1]  (Doc. No. 25.)

In her FAC, or in exhibits attached thereto, plaintiff alleges the following.  Plaintiff is "an African American/Black female."  (Doc. No. 25 at ¶ 6.)  She "was an employee of [defendant CDCR] from June 1, 2016 to approximately October 2021."  (*Id.* at ¶ 23.)  "During all of [her] employment," she "had a son" who "was diagnosed with Autism."  (*Id.* at ¶¶ 27–28.)  "Plaintiff's son's condition is a 'Serious Medical Condition' as defined by the Family Medical Leave Act ['FMLA']," and plaintiff "could not leave her son alone unsupervised."  (*Id.* at ¶¶ 29–30.)

"In May 2019, plaintiff's son required her to take time off to care for him," for which she used FMLA leave.  (*Id.* at ¶ 42.)  "When plaintiff returned from her FMLA leave on or about May 15, 2019, plaintiff's supervisor Maddie Pate berated plaintiff for taking time off."  (*Id.* at ¶ 44.)  "Ms. Pate became aggressive with Plaintiff" because plaintiff had missed a training session during her FMLA leave, which forced Ms. Pate "to reschedule additional training for plaintiff."  (*Id.* at ¶ 45.)  Over the next four months, plaintiff:  (i) "received a corrective action plan ('the Plan')" from Ms. Pate on May 19, 2019, which was in effect for "approximately 30 days" from "May 2019 until June 2019"; (ii) was required by the Plan to "call in an hour prior to her shift to check in with management," time for which she was not paid; (iii) had her request denied by Ms. Pate for co-workers to accompany plaintiff in an ambulance when she suffered a panic attack at work in June 2019; and (iv) was "denied meal periods and rest breaks."  (*Id.* at ¶¶ 46, 49, 52, 56, 59.)  "On approximately August 18, 2019, plaintiff emailed her union representative to voice her concerns regarding not being paid properly and being denied lawful breaks."  (*Id.* at ¶ 61.)  On September 3, 2019, Ms. Pate informed plaintiff that "plaintiff would receive an [absent without leave]" to be taken from her paycheck, even though "[t]here is a not a process for a one-day [absent without leave]."  (*Id.* at ¶ 63.)

/////

---

[1]  On July 6, 2022, the court granted plaintiff leave to file the FAC pursuant to the stipulation of the parties.  (Doc. Nos. 22, 23.)  Accordingly, the court did not consider or address the sufficiency of the allegations in plaintiff's original complaint (Doc. No. 1), which plaintiff filed initiating this action on November 3, 2020.

1    On October 17, 2019, plaintiff filed a charge of discrimination with the Equal

2    Employment Opportunity Commission ("EEOC") and the California Civil Rights Division

3    ("CRD") (hereinafter, "the Charge").[2]  (*Id.* at ¶ 62; Doc. No. 26 at 2–3.)[3]

4         Plaintiff further alleges the following regarding the Charge in her FAC.  In the section of

5    the Charge entitled, "DISCRIMINATION BASED ON (*Check appropriate box(es).*)," plaintiff

6    checked the boxes for race and retaliation, but not for disability.  (Doc. No. 26 at 2.)  In the

7    "particulars" section of the Charge, plaintiff wrote the following:

8         I was hired by [defendant] in or around July 2016 as a Recreation
          Therapist. . . .  On or about May 15, 2019, I returned from FMLA
9         and my supervisor berated me for changes in the schedule that were
          associated with a training I was supposed to attend.  On or about
10        June 4, 2019, Pate entered the office in an aggressive manner and
          yelled at me when she thought that I was the only individual in the
11        room; however, when she noticed my coworkers, she changed her
          tone of voice.  I believe that Pate acts more aggressive toward me
12        because of my race.

13        On or about June 7, 2019, I received an Employee Counseling
          Record from Pate, and as a result, I was tasked with additional work
14        and threatened with an AWOL if I did not comply.  I complained
          that the additional work was unfair; however, [defendant] did not
15        take action to address my complaints. . . .  I believe that I was
          assigned additional work because of my race and because I
16        complained about my supervisors behavior. . . .

17        I believe I have been discriminated against because of my race
          (Black/African American), in violation of Title VII of the Civil
18        Rights Act of 1964, as amended.  I also believe I have been
          retaliated against for engaging in protected activity, in violation of
19        the statute.

20   (*Id.* at 2–3.)

21        Plaintiff alleges that "[o]n August 3, 2020, the EEOC concluded its investigation and

22   issued plaintiff a Right to Sue Letter."  (Doc. No. 25 at ¶ 66; *see* Doc. No. 26 at 5–6.)  As noted,

23   _____

24   [2]  The Charge consists of a completed EEOC Form 5 and indicates that plaintiff submitted the
     Charge to the "Department of Fair Employment & Housing" ("DFEH"), the predecessor agency
25   to the CRD.  (Doc. No. 26 at 2.)  The court will refer to the state agency to which plaintiff sent
     the Charge by its current name, the CRD, throughout this order.

26
     [3]  In her FAC, plaintiff states that she has attached the Charge and the notice of right to sue that
27   she received from the EEOC as exhibits to her FAC.  (Doc. No. 25 at ¶¶ 62, 66.)  In fact, the
     Charge and the notice of right to sue were concurrently filed by plaintiff as a separate entry on the
28   docket.  (*See* Doc. No. 26.)

1    plaintiff filed the complaint initiating this action on November 3, 2020.  (Doc. No. 25 at ¶ 67.)

2           Based on the above allegations, plaintiff asserts the following twelve claims against

3    defendant in her FAC:  (1) discrimination in violation of the Americans with Disabilities Act

4    ("ADA"), 42 U.S.C §§ 12101, *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.*, and 42

5    U.S.C. § 1981a; (2) discrimination based on association with a disabled person in violation of

6    California Government Code §§ 12900, 12940(a); (3) retaliation in violation of the ADA, 42

7    U.S.C. §§ 12203, *et seq.*; (4) retaliation in violation of California Labor Code § 98.6; (5) failure to

8    accurately calculate compensation in violation of the Fair Labor Standards Act ("FLSA"), 29

9    U.S.C. §§ 201, *et seq.*; (6) failure to pay overtime wages in violation of California Labor Code

10   §§ 510, 1194;[4] (8) denial of meal periods in violation of California Labor Code §§ 226.7, 512; (9)

11   failure to reimburse for necessary expenditures in violation of California Labor Code § 2802; (10)

12   failure to pay wages promptly in violation of California Labor Code §§ 201, 202, 204; (11) unfair

13   conduct in violation of the California Unfair Competition Law ("UCL"), California Business and

14   Professions Code §§ 17200, *et seq.*; (12) intentional infliction of emotional distress; and (13)

15   failure to pay wages owed in violation of California Labor Code §§ 1194, 1194.2.  (*Id.* at 1.)

16          On September 26, 2022, defendant filed the pending motion to dismiss eleven of

17   plaintiff's twelve claims—all but Claim 3—on the grounds that plaintiff has not exhausted her

18   administrative remedies, that public entities are not subject to liability under the UCL, that public

19   entities are liable only pursuant to statutes and not at common law, and that defendant CDCR is

20   entitled to Eleventh Amendment immunity.  (Doc. No. 36 at 6–11.)  On October 10, 2022,

21   plaintiff filed an opposition to the pending motion, arguing that she has exhausted her federal

22   administrative remedies.  (Doc. No. 10–14.)  On October 17, 2022, defendant filed its reply in

23   support of the motion.  (Doc. No. 41.)

24   /////

25   /////

26

27   ---
[4]  The FAC contains twelve claims, but they are numbered 1 through 6 and then 8 through 13;
     that is, there is no Claim 7.  For clarity, the court will refer to the twelve claims as they have been

28   numbered in plaintiff's FAC.

4

1                                              **LEGAL STANDARD**

2          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3 sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

4 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

6 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

7 relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

8 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

10 *Iqbal*, 556 U.S. 662, 678 (2009).

11          In determining whether a complaint states a claim on which relief may be granted, the

12 court accepts as true the allegations in the complaint and construes the allegations in the light

13 most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,

14 the court need not assume the truth of legal conclusions cast in the form of factual allegations.

15 *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not

16 require detailed factual allegations, "it demands more than an unadorned, the-defendant-

17 unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers

18 mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

19 *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

20 of a cause of action, supported by mere conclusory statements, do not suffice."). It is

21 inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

22 defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

23 *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

24          In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

25 material that is properly submitted as part of the complaint, documents that are not physically

26 attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

27 necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d.

28 668, 688–689 (9th Cir. 2001).

**ANALYSIS**

**A.      Claim 1:  Discrimination in Violation of the ADA and Rehabilitation Act**

Plaintiff's first cause of action, Claim 1, is predicated on alleged associational discrimination in violation of the ADA and the Rehabilitation Act.  (Doc. No. 25 at ¶¶ 68–78.)

1.      ADA Title I

Plaintiff alleges in her FAC that defendant CDCR is liable under Title I of the ADA because it engaged in intentional discrimination against plaintiff.  (Doc. No. 25 at ¶¶ 68–78.)  Defendant CDCR moves to dismiss plaintiff's ADA claim on the grounds that it is barred by the Eleventh Amendment because plaintiff seeks money damages as to this claim.  (Doc. No. 36 at 12.)

Suits to recover money damages from violations of Title I of the ADA against state entities are barred by the Eleventh Amendment.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *see also Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 818 (9th Cir. 2001) ("In *Garrett*, the Supreme Court held that claims brought under Title I of the ADA against states for money damages are barred by the Eleventh Amendment.").  "[T]he California Department of Corrections . . . [is] entitled to Eleventh Amendment immunity."  *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (citing *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999)).  Plaintiff's ADA claim for money damages against defendant is therefore barred and will be dismissed.

Accordingly, defendant's motion to dismiss Claim 1, to the extent that claim is predicated on an alleged violation of the ADA, will be granted.

2.      Rehabilitation Act

Plaintiff alleges in her FAC that defendant is liable for associational discrimination under § 504 of the Rehabilitation Act, 29 U.S.C. § 754.  (Doc. No. 25 at ¶¶ 68–78.)  "[D]istrict courts in the Ninth Circuit, along with other Circuit courts, have held that . . . Section 504 also allow[s] non-disabled individuals to bring associational discrimination claims."  *Espino v. Regents of the Univ. of Cal.*, No. 22-cv-05880-SPG-JPR, 2023 WL 3549464, at *13 (C.D. Cal. Mar. 31, 2023) (collecting cases).  "A plaintiff seeking to raise a claim for associational discrimination under . . .

6

1   Section 504 must allege a specific, direct, and separate injury resulting from their association with

2   a disabled individual." *Id.* (citing *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1288

3   (D. Or. 2001)).  Defendant does not argue that such an associational discrimination claim does

4   not exist.  Rather, defendant moves to dismiss plaintiff's Rehabilitation Act claim because it

5   contends that she "omitted from [the Charge] any allegations of discrimination based on disability

6   or association with a disabled person," and thereby failed to exhaust her administrative remedies

7   with respect to that claim as required.  (Doc. No. 36 at 7.)

8           "[S]ection 504 of the Rehabilitation Act generally [does not] require[] administrative

9   exhaustion before filing suit."  *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (9th Cir.

10   2007) (citing *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1178 (9th Cir. 1999)); *see also*

11   *A.V. v. Panama-Buena Vista Union Sch. Dist.*, No. 15-cv-00246-MCE-JLT, 2016 WL 3255076,

12   at *7 (E.D. Cal. June 13, 2016) ("The Ninth Circuit has held that a non-federal employee making

13   a claim under Section 504 does not have to exhaust administrative remedies prior to bringing

14   suit."); *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 83 (D.D.C. 2021) ("[I]t is generally

15   understood that Section 504 claims brought by non-federal employees . . . are exempt from the

16   administrative exhaustion requirements that govern claims brought by federal employees under

17   the Rehabilitation Act.").  Plaintiff is not a federal employee, so she was not required to exhaust

18   her administrative remedies before filing her § 504 Rehabilitation Act claim in federal court.

19   (Doc. No. 25 at ¶ 25.)

20           Accordingly, defendant's motion to dismiss Claim 1, to the extent that claim is predicated

21   on alleged associational discrimination in violation of the Rehabilitation Act, will be denied.

22   **B.      Claim 2:  Discrimination in Violation of the FEHA**

23           Plaintiff also alleges in her FAC that defendant discriminated against her "due to her

24   association with [her] son[,] a disabled person," in violation of the FEHA.  (Doc. No. 25 at ¶ 81.)

25   In the pending motion, defendant again argues that plaintiff did not exhaust her administrative

26   remedies as required by the FEHA.  (Doc. No. 36 at 7–8.)

27           "An employee who wishes to file suit under the FEHA 'must exhaust the administrative

28   remedy provided by the statute by filing a complaint with the' [CRD], 'and must obtain from the

1   [CRD] a notice of right to sue.'"  *Pollock v. Tri-Modal Distrib. Servs., Inc.*, 11 Cal. 5th 918, 931

2   (2021) (quoting *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996)).  "[T]he scope of the

3   [CRD] complaint defines the scope of the subsequent civil action."  *Keever v. Mediation Ctr. of*

4   *San Joaquin*, No. 2:13-cv-00029-KJM-KJN, 2015 WL 75194, at *6 (E.D. Cal. Jan. 6, 2015).

5   Therefore, "[a]llegations in the civil complaint that fall outside of the scope of the administrative

6   charge are barred for failure to exhaust."  *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th

7   Cir. 2001).  However, a plaintiff may bring a civil action based on conduct not specifically

8   included in a CRD complaint if it is "like or reasonably related to" the allegations in the CRD

9   complaint or "can reasonably be expected to grow out of an administrative investigation."

10  *Leiland v. City and Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1091 (N.D. Cal. Sept. 2, 2008)

11  (citing *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1614–17 (1995)).  The

12  "rule of liberal construction of pleadings in administrative proceedings applies with special force"

13  to the CRD.  *Stearns v. Fair Emp. Prac. Comm'n*, 6 Cal. 3d 205, 214 (1971); *see also* Cal. Code

14  Regs. tit. 2, § 10003 (2023) ("The [CRD] shall liberally construe all complaints . . . .").  "Where

15  the facts alleged in a discrimination complaint support . . . any other claim over which the [CRD]

16  has jurisdiction, the [CRD] shall construe the complaint to include those claims within the scope

17  of a discrimination claim, regardless of whether such other claims are expressly stated."  Cal.

18  Code Regs. tit. 2, § 10003 (2023).  "We must keep in mind that complainants filing

19  discrimination charges are acting as laypersons and should not be held to the higher standard of

20  legal pleading by which we would review a civil complaint."  *B.K.B. v. Maui Police Dep't*, 276

21  F.3d 1091, 1103 (9th Cir. 2002).

22      Here, defendant does not argue that plaintiff has not sufficiently alleged that she filed a

23  complaint with the CRD and obtained a notice of right to sue.  Rather, defendant argues that "the

24  allegations in [the Charge] (which concern only race discrimination and retaliation) cannot be

25  'like or reasonably related to' the disability discrimination allegations in her FAC."  (Doc. No. 36

26  at 8.)  The court finds defendant's argument to be unpersuasive.

27      Plaintiff has adequately pleaded exhaustion because her allegations in the Charge are

28  reasonably related to the FEHA associational disability discrimination claim that she has asserted

8

1    in her FAC.  In her FAC, plaintiff alleges that she suffered discrimination at the hands of Ms. Pate

2    "because of [plaintiff's] requests for continuous FMLA leave due to her association with [her]

3    son[,] a disabled person . . . ."  (Doc. No. 25 at ¶ 81.)  In the Charge, plaintiff similarly wrote that

4    she began working for defendant in July 2016 and was subjected to discrimination from her

5    supervisor three years later in May 2019, immediately after she returned from FMLA leave,

6    which she had taken to care for her disabled son.  (Doc. No. 26 at 2.)  To determine exhaustion,

7    "it is appropriate to consider such factors as . . . dates of discriminatory acts specified within the

8    charge, perpetrators of discrimination named in the charge, and any locations at which

9    discrimination is alleged to have occurred."  *B.K.B.*, 276 F.3d at 1100; *see also Vasquez v. Cnty.*

10   *of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).  The "crucial element of a charge of

11   discrimination is the factual statement contained therein."  *B.K.B.*, 276 F.3d at 1100 (quoting

12   *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970); *see also Freeman v.*

13   *Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).  Here, the factual statement in

14   plaintiff's Charge is very similar to the allegations of her FAC.  The allegations in both

15   documents concern the same "dates of discriminatory acts" (May through September 2019), the

16   same "perpetrators" (Ms. Pate), and the same "locations" (plaintiff's workplace), as well as the

17   same underlying act (punishment for taking FMLA leave).  Given these similarities, plaintiff's

18   allegations advanced in the Charge are reasonably related to the FEHA claim in her FAC.

19          Moreover, the allegations of plaintiff's FAC could "reasonably be expected to grow out of

20   an administrative investigation."  *Lelaind*, 576 F. Supp. 2d at 1091.  If it is "necessary for the

21   EEOC to investigate the circumstances of" the plaintiff's allegations in the lawsuit "in order to

22   evaluate (or even to understand) [the plaintiff's] theory of the case" presented in the charge, then

23   the allegations in each document are reasonably related.  *Equal Emp. Opportunity Comm'n v.*

24   *Farmer Bros. Co.*, 31 F.3d 891 (9th Cir. 1994).  Here, in order for the CRD to evaluate plaintiff's

25   claims of racial discrimination and perhaps even to understand plaintiff's theory of the case, the

26   CRD would arguably have needed to investigate the circumstances of plaintiff's FMLA leave and

27   her reasons for taking that leave.  In the Charge, plaintiff alleges that she was initially subjected to

28   Ms. Pate's allegedly discriminatory conduct because plaintiff missed a training while out on

1   FMLA leave.  (Doc. No. 26 at 2.)  Plaintiff alleges that Ms. Pate punished her for this occurrence

2   in part because of plaintiff's race.  (*Id.*)  In order to evaluate plaintiff's claim of race

3   discrimination, the CRD would reasonably be expected to investigate the circumstances of

4   plaintiff's FMLA leave, and such an investigation would have revealed that plaintiff took FMLA

5   leave to take care of, and thus was associating with, her disabled son.  The timing of Ms. Pate's

6   alleged punishment of plaintiff when she returned from FMLA leave could suggest that Ms. Pate

7   was motivated to discriminate against plaintiff based not only on her race, but also based upon her

8   association with her disabled son.  Liberally construing plaintiff's allegations in her FAC and in

9   the Charge, the court concludes that plaintiff's allegations of associational discrimination in the

10  FAC could therefore reasonably be expected to grow out of a CRD investigation into the Charge

11  of race discrimination and retaliation.  Keeping in mind her layperson status, the court concludes

12  that plaintiff has adequately pleaded exhaustion in connection with her FEHA associational

13  discrimination claim.

14          Accordingly, defendant's motion to dismiss Claim 2 based on plaintiff's claimed failure to

15  exhaust her administrative remedies will be denied.

16  **C.      Claim 4:  Retaliation in Violation of California Labor Code § 98.6**

17          Plaintiff next alleges in her FAC that she "suffered adverse employment actions by her

18  supervisor, Ms. Pate, which were ratified by CDCR management" in response to plaintiff "filing

19  EEO complaints," which plaintiff contends constitutes retaliation in violation of California Labor

20  Code § 98.6.  (Doc. No. 25 at ¶ 97–102.)  In moving to dismiss this claim, defendant again argues

21  that plaintiff "failed to exhaust her administrative remedies" as to this claim as well because it

22  "exceed[s] those claims raised in [the Charge] of discrimination."  (Doc. No. 36 at 2.)

23          As discussed above, plaintiff's Charge is replete with allegations of adverse actions

24  allegedly taken in retaliation against her.  Moreover, the court notes that defendant did not move

25  to dismiss plaintiff's retaliation claim brought under Title VII (Claim 3), stating in its motion that

26  "the Third Cause of Action for Title VII retaliation" was "raised in [the Charge]."  (Doc. No. 36

27  at 4.)  Defendant contends, however, that plaintiff's Claim 4 is outside the scope of the Charge.

28  (*Id.*)  The court disagrees.  The allegations of retaliation stated in the Charge are like or

10

1    reasonably related to plaintiff's retaliation claim brought under California Labor Code § 98.6.

2          Accordingly, defendant's motion to dismiss Claim 4 based on plaintiff's claimed failure to

3    exhaust administrative remedies will also be denied.

4    **D.      Claim 5:  Failure to Accurately Calculate Compensation in Violation of the FLSA**

5          In her FAC, plaintiff "seeks damages" for alleged "violations of FLSA."  (Doc. No. 25 at

6    ¶ 113.)  Defendant argues that any such claim for damages brought against defendant is barred by

7    the Eleventh Amendment.  (Doc. No. 36 at 11.)

8          "Congress's enactment of the FLSA did not abrogate a State's sovereign immunity from

9    suit in federal court," meaning that "federal courts lack jurisdiction over FLSA cases brought

10   against States in the absence of a waiver of immunity."  *Walden v. Nevada*, 945 F.3d 1088, 1093–

11   94 (9th Cir. 2019) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996)).

12   Defendant is entitled to, and has not waived, sovereign immunity. *Cal. Dep't of Corr.*, 554 F.3d

13   at 752.

14         Accordingly, defendant's motion to dismiss plaintiff's FLSA claim (Claim 5) will be

15   granted.

16   **E.      Claim 11:  UCL**

17         Plaintiff alleges in her FAC that defendant's conduct "has been and continues to be unfair,

18   unlawful, and harmful to the general public" in violation of the UCL.  (Doc. No. 25 at ¶¶ 142,

19   146.)  Defendant argues that "state and local governmental entities are not 'persons' subject to

20   liability under the" UCL.  (Doc. No. 36 at 10.)

21         "California courts have held that a government entity is not a 'person' under the UCL."

22   *Missud v. City and Cnty. of San Francisco*, No. 15-cv-05596-JCS, 2017 WL 1064984, at *18

23   (N.D. Cal. Mar. 21, 2017) (citing *Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1203

24   (1999)) (dismissing a UCL claim brought against a city because a city is not a person under the

25   UCL); *see, e.g.*, *Trinkle*, 71 Cal. App. 4th at 1202 ("Nowhere in the Unfair Competition Act . . . is

26   there a provision imposing governmental liability for violations of the act.").  Because defendant

27   CDCR is a government entity, it is not a "person" subject to liability under the UCL.  *See Godoy*

28   *v. Horel*, No. 09-cv-04793-PJH, 2010 WL 890148, at *5 (N.D. Cal. Mar. 8, 2010) (holding that

1   the Secretary of the CDCR "cannot be sued in their official capacities for violation of § 17200"),

2   *aff'd Godoy v. Horel*, 442 F. App'x. 326, at *1 (9th Cir. 2011) (finding that the Secretary of the

3   CDCR is a "state official[] or employee[]" for purposes of the UCL).

4       Accordingly, defendant's motion to dismiss plaintiff's UCL claim (Claim 11) will be

5   granted.

6   **F.      Remaining State Law Claims:  6, 8, 9, 10, 12, 13**

7       In Claims 6, 8, 9, 10, and 13, plaintiff alleges several wage-and-hour law violations under

8   various provisions of the California Labor Code.  (Doc. No. 25 at ¶¶ 114–39, 164–69.)  In

9   Claim 12, plaintiff asserts a state law claim of intentional infliction of emotional distress.  (*Id.* at

10  ¶¶ 154–63.)  Defendant argues that Claims 6, 8, 9, 10, 12, and 13 are all barred because plaintiff

11  "failed to exhaust her administrative remedies" by "fil[ing] the requisite government tort claim

12  for unpaid wages or meal time violations or other alleged torts."  (Doc. No. 36 at 9.)

13      The California Government Claims Act, codified in California Government Code § 900 *et*

14  *seq.*, "bars the plaintiff from bringing suit against [a public entity]" unless the plaintiff "timely

15  file[s] a claim for money or damages" with that entity.  *State v. Super. Ct.*, 32 Cal. 4th 1234, 1237

16  (2004) (citing Cal. Gov. Code §§ 911.2, 945.4).  In a portion of her opposition entitled "Plaintiff

17  has No Evidence in Support of Her State Law Claims," plaintiff appears to concede that, "[a]fter

18  a thorough review of Plaintiff's records . . . there is no government tort claim filed to support her

19  [Fifth, Sixth, Eighth, Ninth], or Tenth Cause of Action."  (Doc. No. 39 at 15.)  Neither does

20  plaintiff allege or argue anywhere that she has filed the requisite government tort claim in

21  connection with her Claims 12 or 13.

22      Accordingly, defendant's motion to dismiss plaintiff's Claims 6, 8, 9, 10, 12, and 13 will

23  be granted.

24  **G.      Leave to Amend**

25      Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

26  P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

27  amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

28  Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

The court concludes that the granting of leave to amend is appropriate as to some of plaintiff's claims, but that amendment would be futile as to others, as specified below.

The court will not grant plaintiff leave to amend her Claim 1, to the extent that claim is brought under Title I of the ADA, and her Claim 5, because those claims brought against defendant are barred by the Eleventh Amendment.

Similarly, because the granting of leave to amend as to plaintiff's UCL claim would be futile, Claim 11 will be dismissed without leave to amend.

As for plaintiff's state wage-and-hour and tort claims, which are being dismissed due to plaintiff's failure to comply with the California Government Claims Act, the court notes that a plaintiff may not "cure her failure to file a prelawsuit claim by filing a postlawsuit claim" in an effort to comply with the California Government Claims Act. *Le Mere v. Los Angeles Sch. Dist.*, 35 Cal. App. 5th 237, 247 (2019). "At that point, it is too late to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *Id.* (internal quotations omitted). As noted above, plaintiff concedes she did not file the requisite government tort claim with respect to her state law Claims 6, 8, 9, and 10. Accordingly, Claims 6, 8, 9, and 10 will be dismissed "without leave to amend, but without prejudice to filing a new case." *Frohm v. City and Cnty. of San Francisco*, No. 22-cv-06002-JST, 2023 WL 4828685 (N.D. Cal. July 27, 2023) (citing *Le Mere*, 35 Cal. App. 5th 237) (dismissing the plaintiff's claim without leave to amend but also without prejudice because plaintiff did not file a government tort claim before filing her lawsuit).

However, while plaintiff has failed to allege that she had filed a government tort claim for Claims 12 and 13, neither did she concede that she had failed to do so. Instead, plaintiff's opposition to the pending motion appears to cut off mid-sentence at a point where her counsel

13

1   possibly may have explained the lack of allegations of a government tort claim filing.[5]  (Doc.

2   No. 39 at 15.)  While it is perhaps unlikely, it is not unimaginable under these circumstances that

3   plaintiff can allege that she complied with the Government Claims Act.  Accordingly, plaintiff

4   will be granted leave to amend as to her Claims 12 and 13.  She should do so as to these two

5   claims, however, only if she can in good faith allege that she filed a government tort claim as to

6   those claims.

7                                           **CONCLUSION**

8        For the reasons explained above,

9        1.      Defendant's motion to dismiss (Doc. No. 36) is granted in part and denied in part

10               as follows:

11               a.      Plaintiff's claims brought under Title I of the Americans with Disabilities

12                       Act (Claim 1), the Fair Labor Standards Act (Claim 5), California Business

13                       and Professions Code § 17200 *et seq*. (Claim 11), and California Labor

14                       Code §§ 510, 1194, 226.7, 512, 2802, 201, 202, 204 (Claims 6, 8, 9, 10)

15                       are dismissed, without leave to amend;

16               b.      Plaintiff's claims of intentional infliction of emotional distress (Claim 12)

17                       and violation of California Labor Code §§ 1194, 1194.2 (Claim 13) are

18                       dismissed with leave to amend; and

19               c.      Defendant's motion to dismiss plaintiff's claims brought under the

20                       Rehabilitation Act (Claim 1), the California Fair Employment and Housing

21                       Act (Claim 2), and California Labor Code § 98.6 (Claim 4) is denied;

22   /////

23   /////

24   /////

25   /////

26   _____

27   [5]  In this regard, plaintiff's opposition reads:  "Plaintiff is still within the six-month window since
her termination from Defendant and."  (Doc. No. 39 at 15.)  While this sentence fragment may
more likely indicate plaintiff's intention to file a post-lawsuit claim, it is not impossible to believe

28   she could in good faith allege otherwise.

2.      Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a first amended complaint, or a notice of her intent not to file a first amended complaint and to proceed only on the claims found to be cognizable in this order.

IT IS SO ORDERED.

Dated:   **October 10, 2023**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE